United States v. Rinaldi.

# THE UNITED STATES, Plff.,

*v.*

# LUIS RINALDI, Dft.

San Juan, Criminal, No. 998.

### SALE OF LIQUOR UNDER MILITARY LAWS.

Criminal Law—Reasonable Doubt.

    1. Reasonable doubt is such as might arise in the serious affairs of life, or when, upon a reasonable interpretation of the facts, the jury doubts the guilt of the defendant.

Home—Social Drinking.

    2. The military law does not prevent the entertaining of bona fide guests at one's home, including social drinking. Such home may be a single room in which an unmarried man lives when not out on business.

Home—Taking away Liquor.

    3. Entertainment of a friend at home does not include furnishing him with liquor for the purpose of continuing drinking after he leaves the home. It is the duty of juries to give a common-sense interpretation of facts presented.

Opinion filed August 20, 1918.

---

HAMILTON, Judge:

## Instructions To The Jury.

Gentlemen of the Jury: This case has not taken very long in its trial, and upon its face it does not seen to be very important, but it has an importance beyond its face. I think it is the first case of its kind, and how you and I decide this case will

United States v. Rinaldi.

necessarily govern the conduct of the authorities in the future; therefore let us give it careful consideration.

It was brought before the court by information because it is one of the minor offenses, a misdemeanor, but within its scope it is just as much a crime as though presented by the grand jury.

Now there are one or two things that apply to all criminal cases. In the first place, the defendant stands before you at the beginning of the case, or through the case to the end, with the presumption of innocence. A man is presumed innocent until he is proven guilty, and in a criminal case the measure of proof is not simply that he is probably guilty, but more than that. It is not merely that the balance of the evidence is against him in order to be proven guilty, but the proof must be beyond a reasonable doubt in order for you to convict him. What a reasonable doubt is I have to explain in every criminal case, and probably it is something that everybody understands for himself better than anyone can define it. A reasonable doubt is such as comes up as to the facts of the case if you undertake a serious matter in your life. Or I think possibly a better way of expressing it is whether from a reasonable interpretation of the facts you can find the guilt of the defendant.

Looking over the evidence first,—we will go over it together in a few minutes,—if you think there is a reasonable explanation, as reasonable men, for other than his guilt, you give him the benefit of it and acquit him; if not, you find him guilty.

As to the punishment, you have nothing to do with it, that is for the court to decide. It is simply for you to say that he is or is not guilty on the facts before you. So much for the preliminaries.

### United States v. Rinaldi.

Now as to this particular case. The defendant, Luis Rinaldi, is charged with the offense of disposing to one Alexander Campbell two bottles of brandy, which you have seen exhibited before you, and it does not make any difference whether he knew there was a law on the subject or not. It does not make any difference what he wanted or intended to do, whether he bartered, sold, or gave these two bottles to Campbell; he would be guilty regardless of what his intention was. Let us see what are the facts of this particular case. It seems that Rinaldi,—and I do not think that the particular facts in the case are disputed,—lives in San Juan at San José street No. 5; that where he lives is simply a rented room; that this is within the 5-mile zone of Camp Las Casas; that he has no family here, at least except a brother, but that he lives at this particular place within 5 miles of Camp Las Casas. This I think is undisputed. The evidence tends to show that one Campbell is not a witness. He went away on a recent steamer, but I think by agreement there is before you the substance of what he would have testified to, and the evidence of the two detectives was plain and as I recall has not been contradicted. That Campbell was followed up, that he got in conversation with Rinaldi on the Plaza and went with Rinaldi to this room of his on San José street; that they went there without any packages and he came out with these two bottles under his arm,—under his coat. There is one bottle, as I recall the evidence, that is still unopened, the other bottle shows that a small quantity has been taken out, hardly clearing the neck of the bottle. Then the detectives arrested Campbell, and the bottles were taken away from him and are here before you.

The defense, as I understand it, is that Rinaldi and Camp-

United States v. Rinaldi.

bell were personal friends; that Campbell went home with Rinaldi and that they had a glass of wine. I do not recall whether the evidence showed that Rinaldi took any brandy or not, but it seems to have been prescribed for Rinaldi for his health, and apparently was in his home in the nature of medicine. Whether Rinaldi took any with Campbell I do not recall, but at all events Campbell took one or more drinks and then went out and Rinaldi followed him to the door. The door was locked to start with, and Rinaldi had to unlock it when he went there and locked it when he left. Now I think that is substantially the evidence before you. I do not think the facts are disputed so far, and, gentlemen, if I have made any misstatement in anything, please correct me, as I want to state the facts as they stand.

The case will depend largely upon the law and interpretation to be given to two or three of these facts. The policy of the United States government at the present time is to have prohibition within certain limits of the camps. This may or may not be connected with the great prohibition movement which seems to be sweeping the United States, if not the whole world. The object of the government is to keep the men who are to do our fighting in first-class trim and to remove the temptations from their path and to protect the government. Therefore they have seen fit to place this 5-mile zone around the camps, within which it is unlawful to sell or give liquor to anybody, whether it is a soldier or not; and, further, what does not come up in this case at all, to prohibit the giving or selling of liquor to soldiers anywhere on the Island. This second part has nothing to do with this case.

There are exceptions, however, and the defense if true seems

United States v. Rinaldi.

to come within these exceptions; and that is for you to determine. The principal exception is that in a home, your home, my home, a real bona fide home, that you may have such entertainment in the way of giving wines to friends as you think proper, of course within reasonable limits. I charge you, gentlemen, that from the evidence in this case you can very properly find that this was Rinaldi's home. A home, gentlemen, is something which is not dependent upon size, is not dependent upon the presence of a woman, great as that influence may be. Although almost essential, that is a privilege which is not granted to everyone; and if you conclude that this room was Rinaldi's home, where he slept, where he stayed when he was not engaged in business, why that is his home and you have a perfect right to attach to that room all the privileges which the law attaches to a home. Now, what are those privileges? One may invite friends to his home and give them wine or anything else to eat and drink that he sees proper, so far as the military or draft law is concerned. What the effect is on local prohibition I do not say, that does not enter in this case; so I do not pass upon that one way or the other. The wording of the law is: "Provided, that this regulation shall not apply to the giving or serving of such liquor in a private home to members of the family or bona fide guests, other than members of the military forces, or to the sending, shipping, transmitting, carrying, or transporting of such liquor to a private home for use as aforesaid." If the defendant, Rinaldi, took Campbell to his home as a bona fide guest, as a real guest for the purpose of spending a few moments, an hour or any time, for social conversation, and at that time brought out the bottle which we have had exhibited to us, that was part of a friendly, social inter-

course. So far he would not be violating any law; that is a right that he had.

The question, however, is not quite so simple. It would seem from the evidence that Campbell took away with him this bottle and another one that had not been opened, and right there comes the difficulty. I will not attempt to define the limits to hospitality. Hospitality differs in different localities and different parts of the country, and if you find that it is customary to give a man a bottle of brandy when he calls on you then you would be able to acquit this defendant,—if that is ordinary hospitality. Or if you should find that Campbell forcibly took this brandy, knocked Rinaldi down, took the two bottles and walked off with them, why then you would be able to acquit the defendant, because that would not be evidence of giving. But if you find, gentlemen, that this was not a bona fide visit, that they went there for the purpose of drinking, and not for the purpose of a social visit, that would be violating the law. Or if you find that after the social visit was over, by agreement, no matter whether any money was passed or not, or by gift, or whatever it was, that Campbell by consent in any shape or form took these bottles away with him, then Rinaldi would be violating the law. It is for you to say what happened.

Gentlemen, it is the business of juries, as well as of courts, to look at the cases that come before them in a common-sense way. The jury and the court are not organized for dealing in technicalities and for looking at cases in a way that will construe the facts for the government and make a man technically guilty when he is not so morally, or for the purpose of stirring up interpretations of law in aid of the defendant when he is really guilty; and it is for you to decide this case on such gen-

United States v. Rinaldi.

eral principals. Was it a bona fide social visit, at which war or anything else was talked about and wine drank, or did he go there for the purpose of getting this brandy and taking it away? Or after he went there for one purpose, did he by consent of the defendant take this brandy away with him? If he did the defendant would be violating the law. The limit of hospitality, in common sense, is not as much liquor as your guest can drink. A drinking bout is a very different thing from a social visit. If you want to drink with your guest until he can just get out of the house, you have that right and do not violate the law, but your guest is not permitted to take up the bottle and take it to his home for some other purpose. The law does not permit that. If you think the visit was over, and Campbell, with the consent of Rinaldi, took this bottle of brandy off with him,—took two bottles off with him,—it has nothing to do with hospitality and you must find him guilty.

The case then, gentlemen, is in your hands. It is small in size, but is rather important in its issues.